UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INDUSTRIAL MODELS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 8340 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| SNF, INC. d/b/a BRAND FX BODY COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

This case is before the Court on defendant's motion to dismiss for lack of personal jurisdiction or, alternatively, for lack of venue [4]. For the reasons explained below, the Court grants the motion and dismisses the case.

Factual Background

In January 2012, Industrial Models, a closely-held and family-owned corporation that manufactures machined components for use in a wide variety of industries, decided to enter the United States market for fiberglass utility truck bodies. Complaint [1], ¶¶5-6. To that end, Industrial Models "took costly, specific and extensive steps to prepare to enter" the market and, "in doing so, spent a substantial amount of money and invested other valuable resources on development of an Industrial Models product line of [truck bodies] and preparations to manufacture and sell such products in the United States," including purchasing "a set of unique and valuable molds" necessary for manufacturing the truck bodies. Complaint [1], ¶¶6-8. Beginning in early February 2013, Industrial Models began

receiving communications from SNF, Inc. d/b/a Brand FX Body Company ("Brand FX") indicating Brand FX's desire to purchase the molds. *Id.*, ¶10. Industrial Models advised Brand FX that it had incurred significant costs in not only purchasing the molds, but also in setting up shop to enter the fiberglass truck body market. *Id.*, ¶11. According to the complaint, Brand FX responded with a lawsuit. *Id.*, ¶¶12-13.

In March 2013, Brand FX sued Industrial Models in Texas alleging trade dress infringement; Brand FX filed a notice of non-suit in August 2014 and the case was dismissed without prejudice. Complaint, ¶18. At some point in this time period, Brand FX also allegedly told at least one other entity (Badger Truck, with whom Industrial Models had a business relationship) that Industrial Models was infringing its intellectual property rights. Complaint, ¶¶47-51. Industrial Models alleges that Brand FX publicly (to Badger Truck) claimed trade dress infringement, even though it knew it had no trade dress or other intellectual property in the molds, in an attempt to interfere with Industrial Models' business. *Id.*, ¶¶52-53. According to Industrial Models, neither the Texas lawsuit, nor the allegations that Industrial Models was infringing Brand FX's trade dress by using the molds, were well-founded. *Id.*, ¶¶17, 19.

On October 23, 2014, Industrial Models brought the present suit against Brand FX, alleging violation of the Sherman Act §1 (Count I) and §2 (Count II) and seeking damages under the Clayton Act; Industrial Models also claims tortious interference with prospective economic advantage (Count VI) and alleges that it is

entitled to a declaratory judgment of non-infringement of Brand FX's purported trade dress rights (Count III), patent rights (Count IV) and copyrights (Count V). With respect to venue, Industrial Models alleged that:

> [v]enue is proper in this judicial district pursuant to 15 U.S.C. §22 because Brand FX transacts business in this district and, upon information and belief, may be found in this district. Venue is also proper in this judicial district pursuant to 28 U.S.C. §§1391(b), (c) and (d) because a substantial part of the events giving rise to the claims occurred in this district, a substantial part of property that is the subject of this action is situated in this district, Brand FX transacts business in this district, and, upon information and belief, Brand FX has continuous and systematic business contacts with this district such that Brand FX is subject to personal jurisdiction here.

Complaint [1], ¶4.

Brand FX moved to dismiss for lack of personal jurisdiction [4], arguing that it has no meaningful contacts with Illinois to justify its being haled into court here; in the alternative, Brand FX argues that venue is improper here and seeks a transfer to the Northern District of Texas. *See* Motion to dismiss [4]. In support of its motion, Brand FX submitted a declaration from Lee Finley, the company's Vice President. *See* [4-1]. According to Finley's declaration, Brand FX is a Texas corporation with its principal place of business and primary office in Fort Worth, Texas; it has no physical presence in Illinois, has never had an office or distribution center in Illinois, has never had an employee located in Illinois, has no assets in Illinois and does not exercise control over a subsidiary or distributor that transacts business in Illinois. Finley Declaration [4-1], ¶¶2, 4, 5. Finley represents that Brand FX does not sell its products directly to consumers in Illinois and has never

promoted its products in Illinois. *Id.*, ¶ 6. He represents that Brand FX's employees have travelled to Illinois less than one time per year. *Id.*, ¶7.

Finley concedes that Brand FX's truck bodies are sold in all 50 states, including Illinois, but he represents that sales are accomplished through independent, unaffiliated dealers who sell multiple brands and product lines, not just Brand FX's products. *Id.*, ¶6. He represents that product sold in Illinois through such dealers amounts to less than 1% of Brand FX's total sales. *Id.*, ¶6.

Finley denies that Brand FX ever communicated with Badger Truck with the intent of interfering with Industrial Models' business and represents that any communication with Badger (or Industrial Models for that matter) would have been telephonic and initiated by Brand FX's attorneys, who are located in Texas.

Industrial Models does not dispute Finley's factual claims, though it argues that the 1% of sales in Illinois is a substantial figure, given that defendant's annual revenues are approaching $80 million. Industrial Models also emphasizes that Brand FX has a manufacturer in Joliet, which also distributes promotional material, has dealers in Illinois and operates a website, accessible in Illinois, which directs customers to the Illinois dealers. Response [5], pp. 5-6.

## Discussion

"The plaintiff bears the burden of establishing personal jurisdiction." *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Where, as here, the Court resolves the motion on the papers, without an evidentiary hearing, the plaintiff need only establish a *prima*

4

*facie* case of personal jurisdiction. *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, – F.3d –, No. 14-2527, 2015 WL 1692875, at *2 (7th Cir. April 15, 2015). That burden is easily met here.

Generally, this Court is permitted to exercise personal jurisdiction over out-of-state defendants when the defendant has "certain minimum contacts with [Illinois] such that maintenance of the suit [here] does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction: general jurisdiction, which exists only when the party's affiliations with Illinois "are so constant and pervasive 'as to render [it] essentially at home" here, *Daimler AG v. Bauman*, – U.S. –, 134 S.Ct. 746, 751 (2014)(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. –, 131 S.Ct. 2846, 2851 (2011)); and specific jurisdiction, which is "case-specific" and exists where the plaintiff's claim is "linked to the [defendant's] activities or contacts with" Illinois, *Kipp*, 2015 WL 1692875, at *2.

In some instances, however, "Congress has provided special federal rules for establishing personal jurisdiction . . . ." *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). The Clayton Act – which Industrial Models has invoked here – is one such statute. *Id.* Section 12 of the Clayton Act, 15 U.S.C. § 22, provides for nationwide service of process and, therefore, nationwide personal jurisdiction; it also "sets venue anywhere the corporation is an "inhabitant," is "found," or "transacts business." 15 U.S.C. § 22;

5

*KM Enterprises*, 725 F.3d at 724. Because Industrial Models has alleged an antitrust violation, Section 12 applies and personal jurisdiction of Brand FX (a Texas corporation with substantial ties to the United States) exists here, as it would in any district in the United States.

That does not end the matter, however, as Industrial Models still has the burden of establishing that venue is proper here, *e.g., Marzano v. Proficio Mortg. Ventures, LLC*, 942 F.Supp.2d 781, 787 (N.D. Ill. 2013), and for that requisite showing, it cannot rely on Section 12 alone.

The Seventh Circuit has instructed that Section 12's personal jurisdiction clause must be read in the context of the venue clause. Section 12 is not restrictive, but "it falls well short of providing universal venue in every judicial district in the United States." *KM Enterprises*, 725 F.3d at 725. Allowing "antitrust plaintiffs to mix and match Sections 12's service-of-process provision with Section 1391's general venue provision renders the venue inquiry meaningless, since venue is satisfied in every federal judicial district under subdivision (c)(2)." *Id.* at 729. This defies both common sense and congressional intent. *Id.* at 729-730. Thus, to avail itself of the "privilege of nationwide service of process, [Industrial Models] must satisfy the venue provisions of Section 12's first clause." *Id.* at 730.

Although personal jurisdiction may be appropriate everywhere in the United States under the Clayton Act, venue is proper only in the districts where the corporation is an inhabitant, is found or transacts business. 15 U.S.C. § 22. "A corporation is an inhabitant of the state of its incorporation and is found in districts

6

where it is present and carries on continuous local activities." *United Phosphorus Ltd. v. Angus Chemical Co.*, No. 94 C 2078, 1996 WL 164394, at *3 (N.D. Ill. Apr. 2, 1996)(citing *CCP Corp. v. Wynn Oil Co.*, 354 F. Supp. 1275, 1278 (N.D. Ill. 1973)). Brand FX is a Texas corporation with its principal place of business located in Fort Worth, Texas, Complaint [1], ¶2. Moreover, given the undisputed jurisdictional facts set out in Finley's affidavit, the Court cannot say that Brand FX maintains a presence or carries on continuous activities in this district. It is not an inhabitant of the Northern District of Illinois; nor is it found here.

In the context of the Clayton Act, the phrase "transacts business" is given "the practical everyday business or commercial concept of doing or carrying on business of any substantial character." *KM Enterprises*, 725 F.3d at 731 (quoting *United States v. Scophony Corporation*, 333 U.S. 795, 807 (1948)). A defendant like Brand FX "transacts business" in a given district, for purposes of § 12, when it "promote[s] its goods through product demonstrations, solicit[s] orders through salespersons located in the district, and ship[s] its products to the district." *KM Enterprises*, 725 F.3d at 731 (citing *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359 (1927)). Similarly, a defendant "transacts business" when it "maintain[s] offices and provide[s] customer assistance in the district; when it ma[kes] substantial purchases in the district; or when it "exercise[s] extensive control over a subsidiary or distributor that transact[s] business in the district." *Id.* (citations omitted). Brand FX's activities in this district fall far short of any of these examples.

7

*KM Enterprises* is instructive on this issue. The out-of-state defendant there manufactured traffic light interruption devices used by emergency vehicles; the plaintiff, a competitor, sued in the Southern District of Illinois alleging violations of both the Sherman and Clayton Acts. Even though defendant's product was available in Illinois and installed in at least 71 intersections in the Southern District, the Seventh Circuit nonetheless determined that the defendant did not "transact business" in the Southern District. The defendant sold its product, for the most part, indirectly in the district; it had no offices or employees in the district; whatever product existed in the district was purchased from and installed by third-party distributors that were not controlled by the defendant; and the defendant did not send agents into the district to maintain its product or provide customer service. 725 F.3d 731-32. All of this is true of Brand FX as well. Brand FX has no employees, no offices, no presence in this district; it does not do business of any substantial character in this district; and, to the extent it sells any product in this district, it does so through entities it does not control. In fact, it would appear that Brand FX has even fewer product sales than the defendant in *KM Enterprises*. In short, Brand FX does not transact business in the Northern District of Illinois, and, as a result, venue is not proper here under the Clayton Act.

Nor is venue proper under 28 U.S.C. § 1391 – the venue provision that would operate in the absence of a special statutory provision like the Clayton Act's Section 12. Section 1391 provides that venue is proper in any district where the defendant "resides" – an inquiry that effectively merges with the personal jurisdiction analysis

8

under the familiar standards of *International Shoe*. *See, e.g., KM Enterprises*, 725 F.3d at 732.

Industrial Models argues that Brand FX has a manufacturer in Joliet, which also distributes promotional material; it transacts business in this district (even if a small amount); its sales personnel have travelled to Illinois within the past 10 years; and its National Accounts include buyers with large presences in this district. Response [5], pp. 3-4. According to Industrial Models, Brand FX's website directs customers to its Illinois dealers – of which there are three, one in Naperville, one in Romeoville and one in McHenry. *Id.*, pp. 5-6. Moreover, according to Industrial Models, even if Illinois comprises only 1% of defendant's business – that 1% is a pretty substantial figure, given that defendant's annual revenues are approaching $80 million.

These facts do not establish the type of continuous and systematic contacts with the forum that are necessary to justify the exercise of general jurisdiction, and they do not suggest any attempt on the part of Brand FX to "purposefully exploit" the Illinois market. *Advanced Tactical*, 751 F.3d at 803. Neither the solicitation or business, nor the operation of a website that is equally accessible in the forum state as elsewhere is enough to confer jurisdiction without more. *Id.* (specific jurisdiction)*; Kipp v. Ski Enterprise Corp. of Wisconsin,* – F.3d –, 2015 WL 1692875, at *3-4 (7th Cir. April 15, 2015)(general jurisdiction).

What's more, the limited contacts Brand FX has with this district have nothing to do with this lawsuit. "Specific jurisdiction must rest on the litigation-

9

specific conduct of the defendant in the proposed forum state." *Advanced Tactical*, 751 F.3d at 801. "For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, – U.S. –, 134 S.Ct. 1115, 1121 (2014). This case does not arise out of any business transaction accomplished through Brand FX's website, its dealers or its manufacture. Rather, Industrial Models claims that Brand FX violated the Sherman Act by restraining competition in the United States market for fiberglass utility bodies when it tried to impede Industrial Models' business dealings (by trying to buy Industrial Models' molds and then initiating a sham litigation in Texas claiming trade dress infringement) and tortiously interfered with prospective business advantage (same allegations), and thus seeks a declaratory judgment that its molds do not, in fact, infringe any intellectual property rights held by Brand FX. These allegations do not arise from any transactions or sales Brand FX may have made through its website or via its Illinois manufacture or dealers.

Nevertheless, Industrial Models argues that jurisdiction and thus venue is proper here because: (1) Brand FX reached into this forum to attempt to buy the molds and then, when Industrial Models declined the offer, threatened Industrial Models with intellectual property claims that had no basis in law or fact; (2) sued Industrial Models (an Illinois citizen) in a sham litigation; and (3) interfered with Industrial Models' business by repeating its allegations and threats to a potential customer.

10

Yet none of these "contacts" are sufficient to bring this cause of action in Illinois. The "sham litigation" was filed in Texas. The offer to purchase the molds and the "threats" for violation of trade dress were made, if at all, via telephone – as were the communications to Badger Truck (which is located in Wisconsin). Other than Industrial Models' presence in Illinois, these jurisdictional facts add nothing to connect defendant to the state. And the Seventh Circuit has instructed that the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Advanced Tactical*, 751 F.3d at 801. The Supreme Court has recognized that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden,* 134 S.Ct. at 1122.

Having found venue lacking, the Court denies Brand FX's request to transfer this case to the Northern District of Texas. Transfer under 28 U.S.C. § 1404 is appropriate when venue is proper in both the transferor court and the transferee court. *E.g., Flava Works, Inc. v. A4A Reseau, Inc.*, No. 15 C 610, 2015 WL 1926280, at *1 (N.D. Ill. April 28, 2015)(citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)).

## Conclusion

For the reasons explained above, the Court finds venue is not proper in this district and grants defendant's motion to dismiss [4]. This dismissal does not preclude Industrial Models from refiling and litigating its claims in a proper forum.

11

*Manex v. Bridgestone Firestone North American Tire, LLC*, 533 F.3d 578, 584 (7th Cir. 2008).

Dated: May 18, 2015

                    ENTERED:

                      *[signature]*
                      United States District Judge